Mr. Joseph Philip James Diaz City Attorney 501 2nd Street P.O. Box 762 Newport, AR 72112
Dear Mr. James:
You have requested my opinion, pursuant to A.C.A. § 25-19-105(c)(3)(B), a section of the Freedom of Information Act (FOIA) (A.C.A. § 25-19-101
through -109) (Repl. 1996 Supp. 2001), concerning the release to a private citizen of records relating to the dismissal of the Diaz police chief. You report that the subject of these records has objected to their release and that the City of Diaz has taken the position that "there is no compelling interest in their disclosure." You have further provided for my review the following records:
1. A "written reprimand" dated September 17, 2001
2. An undated copy of the same written reprimand
3. An Employee Warning Record dated November 20, 2001
 4. A letter of termination dated November 26, 2001 from the successor chief of police to the subject of your request
 5. A Personnel Change-in-Status Report dated November 30, 2001 reflecting the dismissal
 6. Minutes of an executive session dated December 3, 2001 reflecting the city council's refusal to override the mayor's decision to dismiss the chief of police
 7. An undated, handwritten letter from the mayor of Diaz to the Arkansas Employment Security Department (the" AESD") relating to the former chief's application for unemployment benefits
In my opinion, all of the documents itemized above constitute "employee evaluation/job performance records" under the FOIA. The FOIA does not define the phrase "employee evaluation or job performance record," nor have the courts found occasion to do so. The Attorney General has consistently taken the general position that records relating to an employee's performance or lack of performance on the job are properly classified as job performance records under the FOIA. See, e.g., Ark. Ops. Att'y Gen. Nos. 2002-047; 2001-203; 96-132; 91-324. Formal, written employee evaluations of course fall into this category. In addition, this office has previously opined that documents such as written reprimands and letters of caution, documents upon which a recommendation for dismissal was based, and letters related to promotions and demotions are "job performance records." See, e.g., Ops. Att'y Gen. Nos. 2001-203; 99-147; 93-105, 93-055, 92-231, 92-191, 91-324, and 91-303.
The FOIA dictates that job performance records be released only if the following three conditions have been met:
 (1) There has been a final administrative resolution of any suspension or termination proceeding;
 (2) The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 (3) There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1). Although the issue is finally one of fact, given the amount of time that has passed since the dismissal, I assume a final administrative resolution of the termination has occurred. Moreover, given that the city reportedly based its decision to resist disclosure based purely on the "compelling public interest" prong of the above test, I gather that city officials have concluded based upon the facts that items 1 through 6 listed above indeed formed a basis for the police chief's termination. (I will discuss item 7 separately infra.) I will focus my discussion, then, on whether a compelling public interest exists to disclose these six documents.
The FOIA at no point defines the phrase "compelling public interest." However, a leading commentator on the FOIA has provided some guidelines for making the factual determination whether such an interest exists.See Watkins, The Arkansas Freedom of Information Act (m m Press, 3rd ed. 1998). He states, for instance: "The nature of the problem that led to the suspension or termination will undoubtedly bear on the `compelling public interest' question. . . ." Id. at 146. He further observes: "The public's interest in disclosure is most likely to be compelling when the records reflect a breach of trust or illegal conduct by public employees. . . . However, the mere fact that an employee has been suspended or terminated does not mean that the records should be made public; if that were the case, the `compelling public interest' phrase would be a redundancy. . . ." Id. Elaborating on this point, Watkins remarks: "A general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present." Id. at 147. Professor Watkins additionally notes that the status of the employee, or "his rank within the bureaucratic hierarchy," may also be relevant in determining whether a "compelling public interest" exists. Id. at 146-47 (remarking that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.")
In the present case, I am struck by the fact that the chief of police is a prominent public figure in any municipal government. I also find it significant that the record contains allegations of serious misconduct and breach of trust on the former chief's part. In my opinion, the public interest in discovering the nature of these allegations is particularly strong. Accordingly, notwithstanding your apparent conclusion to the contrary, I believe the custodian of these records should produce them to the extent they served as a basis for the dismissal. I must note, however, that the custodian should redact the social security number listed on the Personnel Change-in-Status Report, since this information is exempt from disclosure under federal law. See 5 U.S.C. § 552a (the "Federal Privacy Act").
Before discussing the final document listed above, I feel obliged briefly to address why I think it might well be appropriate to release the minutes of the executive session in which the city council declined to override the mayor's decision to dismiss the police chief. This office has opined on various occasions that the minutes of an executive session should not be disclosed because the whole purpose of the executive session is to avoid public disclosure of what is said in the discussion.See, e.g., Ark. Ops. Att'y Gen. Nos. 2001-172; 2000-251; 94-391; 91-323. However, A.C.A. § 25-19-106 is unequivocal in requiring both that the purpose of the executive session be publicly announced before retiring into closed session and that the vote on the issue presented be publicly taken after the executive session ends. In the present case, the minutes recite only the question presented for a vote and the aldermen's votes on that question. Consequently, all of the information contained in the minutes is already a matter of public record.
With respect to the seventh document listed above — an undated letter from the mayor to the AESD regarding the ex-chief's application for unemployment benefits — this document obviously could not have "formed a basis for the decision" to terminate the chief. The document consequently fails to meet the second prong of the test to determine whether to release an employment evaluation.
Moreover, I believe the document is shielded from disclosure pursuant to the FOIA's "catch-all" exemption, which provides:
 Except as otherwise specifically provided by this section or by laws specifically enacted to provide otherwise, all public records shall be open to inspection and copying by any citizen of the State of Arkansas during the regular business hours of the custodian of the records.
A.C.A. § 25-19-105(a) (emphasis added). Specifically with respect to documents supplied by employers to the AESD, A.C.A. § 11-10-314(a)(1) (Repl. 2002) provides:
 Except as otherwise provided in this section, information obtained by the Director of the Arkansas Employment Security Department from any employing unit or individual pursuant to the administration of this chapter and any determination as to the rights or status of any employer or individual made by the director pursuant to the administration of this chapter shall be held confidential and shall be protected by government privilege.
See also Ark. Ops. Att'y Gen. Nos. 2001-040 (opining that documents "concerning specific claims for unemployment benefits are exempt from disclosure, to the extent that they contain the type of information that is deemed confidential under . . . A.C.A. § 11-10-314"); 94-203; 94-170; 91-003; Watkins, supra at 154-55 (generally discussing the application of this statute).
Although A.C.A. § 11-10-314 exempts from disclosure only information "obtained by the Director," I believe common sense compels the conclusion that this exemption extends to any copy of such information retained by the employing unit. To conclude otherwise would be virtually to gut the exemption, since employing units can be expected to retain copies of such information in the ordinary course of business. This office has previously opined that, if the circumstances warrant, an exemption applicable to public records can follow those records into the hands of a third party. See attached Ark. Op. Att'y Gen. No. 2001-172 and opinions discussed therein. Conversely, my predecessor likewise opined that the exemption might apply to documents obtained or generated by a third party to benefit or assist a public entity like the AESD. Extrapolating from this principle, I believe a document generated by a public official like the mayor solely for the purpose of enabling the AESD to perform its duties would be exempt from disclosure by both the mayor and the AESD.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh